UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA GROSSMAN, individually
and on behalf of injured
California Shareholders,
Distributors and Customers            Civ. S-08-1987 LKK/DAD
of Natural Health Trends Corp.,

    Plaintiffs,

  v.
                                            O R D E R
NATURAL HEALTH TRENDS CORP.,
CHRIS SHARNG, GARY WALLACE,
SCOTT DAVIDSON, RANDALL
MASON and DOES 1-50, inclusive,

    Defendants.

_____/

    Plaintiff, Lisa Grossman, has brought this suit individually and on behalf of injured California shareholders, distributors and customers of defendant Natural Health Trends Corporation (NHT). Defendants include NHT, current officers of NHT and other unnamed defendants. Plaintiff originally brought suit in state court, which defendant then removed to this court. Pending before the court is plaintiff's motion to remand and defendants' motion to dismiss. Because the court grants the former, it cannot reach the latter.

1

# I. Background[1]

NHT is a Delaware corporation qualified to do business and conducting business inter alia in Sacramento, California through their multi-level marketing, sales, distribution, and public sale of its corporate stock. Compl. ¶ 2. NHT and its subsidiaries offer a variety of personal care, wellness and lifestyle products which are sold worldwide through numerous independent distributors located in several countries.

The general nature of plaintiff's allegations concern defendants' deception of California residents by inducing them to become distributors, shareholders, or customers of NHT. Compl. ¶ 12. In addition, NHT is alleged to have provided false information to the public, including false SEC quarterly and other required reports, which were relied upon by California residents in determining whether to enter into various relationships with defendants. Id.

Plaintiff alleges that NHT's unfair business and advertising practices have taken many forms, describing two examples concerning the products 180º Life System and Triotein. Compl. ¶ 14. 180º Life System was manufactured in late 2003 with a two year expiration date. Id. In the past three years, plaintiff alleges that the product was falsely re-dated by removing the original date with industrial ink remover and replacing it with a new date to extend

---

[1] All allegations derive from the plaintiff's Complaint filed on July 16, 2008, and are taken as true fo the purpose of the pending motions only.

2

the selling period. Id. This was done without proper documentation and efficacy testing. Id.

Similar practices are alleged to have occurred regarding the Triotene product. Inventories of Triotene from the August 2005 Japan launch of the product were back-piled in a warehouse in the U.S. due to the less-than-expected sales in Japan. Id. ¶ 15. In August 2007, as the product neared expiration, it was re-labeled in English adding expiration extensions of 18 to 24 months and then marketed and sold in California. Id. The product was accompanied by a letter from the manufacturer stating that the product could remain effective for another 6 to 30 months if stored in particular conditions, which are out of the control of the end customer. Id. There were no details provided as to what would have permitted the lifespan to be 30 months versus 6, leading plaintiff to believe that no testing occurred but rather the letter was meant to prevent additional loss to the NHT account. Id.

Further allegations of NHT's fraudulent and deceptive acts relate to the products sold to Chinese distributors in 2008. Id. ¶¶ 16-22. Around March 17, 2008, NHT third-party import and delivery providers to China were informed by customs in Zhuhai, China[2] that NHT products were being held to review the declared values of the items. Id. ¶ 16. Chinese customs officials stated that "the declared product values were improperly low" as pricing

---

[2] Zhuhai, China is the import location for all products sold to Chinese distributors registered in the Hong Kong system, which is where NHT was registered. Hence, this was the sole China storage location for import inventories. Compl. ¶ 16.

for the items on a Hong Kong website was much higher than the values declared. Id. ¶ 17. At the time, a large amount of NHT inventory was stored at NHT third-party warehouses in the Zhuhai free trade zone. Id. ¶ 16. On the date that NHT was notified of this review, only enough products to satisfy orders through March 2, 2008 had cleared customs. Id.

As a result, by the end of March any orders placed after March 2, 2008 had not arrived at their ultimate destination and the declared value rate and the hold-up of the products import had not been resolved. Id. ¶ 17. At the time of custom's notification, more than 60% of the entire NHT revenue came from sales to Chinese national customers and registered distributors. Id. The problem with China's customs was never reported to California shareholders and revenues from the orders in March 3 through 31 were improperly counted in NHT's first quarter results. Id. ¶ 17. Plaintiff alleges that this artificially maintained an inflated stock price, affecting California shareholders and distributor investments and permitting NHT to stay in business in California. Id.

In addition, NHT failed to disclose to NHT shareholders and distributors China customs officials' initial request that NHT pay duties based on declared values that were five times higher than had been previously agreed, an amount that would have "cripple[d] NHT financially." Id. ¶ 18. Around the middle of April, NHT was able to negotiate a "temporary deposit" arrangement, where deposits on the higher declared rates were paid to enable the importing of items being held at customs in Zhuhai. Id. A final declared value,

4

1  still significantly higher than the price that was initially
2  declared, was finally decided in early June and products started
3  to ship out then. Id. ¶ 19.
4     On March 24, 2008 the NHT stock price was at $.68, but by
5  April 14, 2008 the stock price had risen to $1.18, a 73.5%
6  increase. Id. ¶ 22. This inflation in the stock price is alleged
7  to be due to the false information relayed to distributors and
8  shareholders and "fraudulently and deceptively withheld material
9  information," including misrepresentations regarding an increase
10 in demand for the product. Id. ¶¶ 21-22.
11    The plaintiff alleges additional practices intended to deceive
12 shareholders. On May 14, 2008, NHT and the named defendants who
13 were part of executive management publicly filed the first quarter
14 10-Q which directly violated reporting standards by falsely
15 reporting income and revenue from products that had not been
16 shipped by the end of the quarter. Id. ¶ 23. At the time of the
17 filing, China customs was still maintaining a required declared
18 value that was at least three times larger than the previously
19 established rates. Id. NHT issued deceptive public statements
20 saying they had raised prices to offset increases in customs
21 duties. Id. ¶ 24. In reality, NHT had raised prices to offset
22 changes in the Hong Kong/China compensation plan to increase sales
23 volumes in the China market. Id. On May 14, 2008, the NHT stock
24 price was $1.05. After the first quarter results were published,
25 including deceptive claims and fraudulent reporting, the stock
26 price on May 17, 2008 closed at $1.45, a 38% increase. Id. ¶ 26.

Plaintiff also alleges misconduct by the defendants specifically with regards to her agreement to act as a distributor for NHT. She alleges that she entered into an oral agreement with defendants, NHT, which was partially memorialized by various writings and also through the conduct of the parties. Id. ¶ 27. In return for plaintiff acting as a distributor, NHT agreed to compensate plaintiff based on a detailed compensation plan which relied on "the development of certain business center positions and legs or lines of distribution". Id. Plaintiff alleges that NHT breached this agreement by failing to properly compensate her.

Plaintiff brought suit in Sacramento County Superior Court on behalf of herself and "Injured California Stockholders, Distributors and Customers of [NHT]." Compl. at 1. She alleges causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, intentional and negligent misrepresentation, unfair business practices, unjust enrichment, and breach of fiduciary duty. On August 22, 2008, defendants removed the action to this court pursuant to the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p, 77bb. Plaintiff now moves to remand. Defendants move to dismiss or, alternatively, to stay the case pending arbitration.

## II. STANDARD FOR A MOTION TO REMAND

The removing defendant always has the burden of establishing federal jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Upon removal, the district court must determine whether it has subject matter jurisdiction and, if not, it must

6

1  remand. <u>Lyons v. Alaska Teamsters Employer Serv. Corp.</u>, 188 F.3d
2  1170, 1171 (9th Cir. 1999). A defendant may remove any state court
3  action to federal district court if the latter court has original
4  jurisdiction under "a claim or right arising under the
5  Constitution, treaties or laws of the United States." 28 U.S.C. §
6  1441; <u>see</u> <u>also</u> 28 § U.S.C. 1331. Whether a cause of action arises
7  under the Constitution, treaties or laws of the United States must
8  be determined solely from what is contained in the plaintiff's
9  well-pleaded complaint. <u>Taylor v. Anderson</u>, 234 U.S. 74, 75-76
10 (1914). Federal jurisdiction is not proper when the federal
11 question only arises through the defendant's defense or the
12 plaintiff's necessary response thereto. <u>Id.</u>; <u>Christianson v. Cold</u>
13 <u>Indus. Operating Corp.</u>, 486 U.S. 800, 809 (1988).

### III. ANALYSIS

Defendants removed this action to federal court asserting that removal was permitted under the Securities Litigation Uniform Standards Act (SLUSA), to the extent that plaintiff's suit was a class action alleging misconduct in connection with the sale of covered securities. Defendants contended that supplemental jurisdiction was proper over plaintiff's additional claims. Plaintiff moves to remand or, alternatively, seeks leave to amend her complaint to omit the allegations that would bring the suit under the ambit of the SLUSA. For the reasons noted below, the court will remand and accordingly, will not reach defendant's motion to dismiss.

In 1995, Congress passed the Private Securities Litigation

Reform Act (PSLRA) assertedly in response to the increasing number of "strike suits", or "meritless class actions that allege fraud in the sale of securities" brought against companies that deal with nationally traded securities. Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107 (2d Cir. 2001). The Act's sought to "deter or at least quickly dispose of those suits whose nuisance value outweighs their merits [by] plac[ing] special burdens on plaintiffs seeking to bring federal securities fraud class actions." Merrill Lynch, Peirce, Fenner & Smith, Inc. v. Dabit 547 U.S. 71, 82 (2006). The unintended effect of the statute was that some of the cases that the PSLRA was meant to address were brought in state court to avoid the reach of the statute. Id. Congress responded by enacting the SLUSA.

The SLUSA "provides for the removal and dismissal of class actions brought pursuant to state law alleging misrepresentations in connections with the purchase or sale of a covered security." Patenaude v. Equitable Life Assurance Society of United States, 290 F.3d 1020, 1023-24 (9th Cir. 2002). The relevant elements for removal and dismissal of a claim under SLUSA are: 1) the lawsuit is a "covered class action"; 2) the claims are based in state law; 3) the claims concern a "covered security"; and (4) that plaintiff alleges "untrue, manipulative, or deceptive statements or omissions in connection with the sale of a covered security." Haney v. Pacific Telesis Group, 2000 WL 33400194 at *19 (C.D. Cal. Sept. 19, 2000); 15 U.S.C. § 77p(b).

A "covered class action" is defined under the SLUSA as a

1  single lawsuit in which "one or more named parties seek to recover
2  damages on a representative basis on behalf of themselves and other
3  unnamed parties similarly situated, and questions of law or fact
4  common to those persons or members of the prospective class
5  predominate over any questions affecting only individual persons
6  or members." 15 U.S.C. § 77p(f)(2).[3] The plaintiff contends that
7  this definition is not met because, inter alia, questions of law
8  or fact common to the class do not predominate.  As I now explain,
9  it appears to the court that removal does not lie.
10     The only cause of action pled as a representative action is
11 plaintiff's first claim, for violation of California's Unfair
12 Competition Law, Bus. & Prof. Code § 17200 et seq., and False
13 Advertising Law, Bus. & Prof. Code § 17500. Plaintiff alleges that
14 "[d]efendants' conduct . . . constitutes unfair, immoral,
15 unethical, unlawful and/or fraudulent business practices . . . and
16 false, fraudulent, misleading and deceptive advertising
17 activities," incorporating by reference her more specific
18 allegations regarding defendants' conduct. Compl. ¶¶ 38-39. In
19 order for this cause of action to be removable under the SLUSA,
20 plaintiff's UCL claim must contain at least a basic allegation of

---

[3] SLUSA also provides that a "covered class action" includes a group of lawsuits filed in or pending in the same court and involving common questions of law or fact, or a suit in which damages are sought on behalf of fifty or more named plaintiffs. 15 U.S.C. § 77p(f)(2)(A)(i)-(ii). Neither of these definitions appear to apply to the instant case.

9

securities fraud, and must qualify as a class action.

This standard has not been met by plaintiff's complaint as pled. Plaintiff's general allegations state that defendants acted in various improper ways to inflate the stock price of NHT, inducing shareholders, distributors, and customers to enter in relationships with NHT. The specific harm plaintiff alleges she suffered, however, concerns only defendants' employment relationship with her and, specifically, their alleged failure to compensate her in accord with their compensation agreement. See Compl. ¶¶ 27-37. She does not allege that her compensation included stock nor that she was a stock owner. For this reason, her claims do not appear typical of the group of plaintiffs she purports to represent in the first cause of action, i.e. stock owners and injuries they allegedly suffered by virtue of fraud related to the value of such stock. Put differently, questions of fact and law intrinsic to plaintiff's personal allegations do not appear to share material commonalities with the allegations made on behalf of the purported class. Accordingly, removal under the SLUSA was improper.

## IV. CONCLUSION

For the reasons stated herein, the court REMANDS this action to the Sacramento County Superior Court. The clerk is directed to close the case.

IT IS SO ORDERED.

DATED: October 22, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT